CHIEF JUSTICE GRAY
dissenting.
¶29 I respectfully, but strenuously, dissent from the Court’s opinion. Under either standard discussed by the Court-that is, legality or abuse of discretion-I would affirm the District Court’s sentencing condition restricting Herd’s driving privileges during the 40-year suspended sentences.
¶30 One can readily sympathize with any person who receives tragic information relating to a family member’s health. I daresay this has happened to all of us, and probably more than once. We all know, of course, that our judgment is easily impaired at such times, and that a lack of sleep compounds the problem exponentially. Here, Herd received the news of her mother’s stroke-and that her mother probably would not live more than 48 hours-in the evening hours in Seattle, Washington. Her parents were in Great Falls, Montana, a driving time *498 of approximately 12 hours from Seattle. She faced a number of choices, including flying to Great Falls the following morning; getting some sleep and then setting out for the long drive; and setting out immediately for the overnight drive and doing so-as the Court observes-“with urgency.” Herd chose the latter.
¶31 By the time Herd exited the interstate onto Highway 200, she had been awake for approximately 24 hours, except for a 2Vz hour nap off the interstate in Idaho. Soon after driving onto the two-lane Highway 200, Herd passed a vehicle and remained in the passing lane. Some 15 miles later, her vehicle hit another vehicle head-on, killing four people. Herd ultimately pled guilty to four counts of negligent homicide.
¶32 The maximum sentence for each count of negligent homicide-representing each of the people killed by Herd’s admitted negligent driving-is 20 years in prison, a fine of $50,000 or both. See § 45-5-104(3), MCA (1999). In other words, the District Court could have sentenced Herd to 80 years in prison. Instead, it sentenced her to concurrent 20-year sentences on Counts I and II, all suspended, and concurrent 20-year sentences on Counts III and IV, all suspended, but running consecutive to the other 20-year suspended sentences. The District Court also carefully, and deliberatively, conditioned each set of suspended concurrent 20-year sentences on Herd not driving a motor vehicle. It is clear from the Judgment that the court expressly did so to prevent Herd from driving a motor vehicle for a total of 40 years. The District Court made clear that it was holding Herd responsible and accountable for her four felony counts of negligent homicide, which resulted in four deaths, and stated that the prospects for Herd’s rehabilitation are good if she follows through on the Judgment. The court also stated that, while incarceration was not necessary to serve the interests of justice and the needs of public safety, it was necessary for Herd to change her approach to life and its problems. Finally, the court noted that, while no incarceration was being ordered at that time, “[i]mprisonment would not create an excessive hardship on you or your family.”
¶33 Herd appeals from the 40-year driving restriction. Relying on State v. Ommundson, 1999 MT 16, 293 Mont. 133, 974 P.2d 620, she asserts that sentencing courts do not have unfettered or unlimited authority to impose restrictions on suspended sentences. She is correct, of course, but the facts upon which we based our conclusion in Ommundson do not support a conclusion here that the 40-year driving restriction must be reversed.
¶34 In Ommundson, the defendant pled guilty to felony DUI and *499 received a 54-month commitment to the Department of Corrections for placement in an appropriate institution, all but 6 months suspended, on conditions including that the defendant participate in a sex offender treatment program. Ommundson, ¶ 1. The condition was based on the defendant’s multiple prior convictions for indecent exposure and a sex offender evaluation indicating that the defendant needed sex offender treatment. Ommundson, ¶ 3. We discussed the statutory requirements for “reasonable” conditions considered necessary for the “objectives of rehabilitation and the protection of the victim and society.” Ommundson, ¶ 5 (citations omitted). We then concluded that a court’s authority to impose conditions “is not without limit,” determined that the sex offender treatment condition had no correlation to the underlying offense and did not advance the statutory rehabilitation or protection objectives, and reversed the condition. Ommundson, ¶¶ 11-13. Nothing in Ommundson requires a similar result here.
¶35 It is clear and undisputed in the present case that the 40-year driving restriction is directly related to the four negligent homicide offenses Herd committed. Absent her driving under questionable conditions-little sleep and all night on unfamiliar roads-and impaired judgment-resulting from the tragic news of her mother’s stroke-we must assume the four people she killed still would be alive. Moreover, it is clear that the District Court was determined to rehabilitate Herd and protect society at the same time; not by incarcerating her, but by giving her plenty of time to get her life and judgment under better control without the possibility of her killing other people as a result of her negligent driving.
¶36 Herd also argues the statutory “reasonable” conditions language, and urges that the restriction at issue here does not meet that limitation. The Court is persuaded that the driving restriction is unreasonable in its severity, but I could not disagree more. In my view, Herd’s sentence is a “gift” in the context of the reality that four people died as a result of her conduct. The District Court imposed no incarceration, much less the available 80 years in prison. In exchange, the court imposed-among other things-a 40-year restriction on the privilege of driving a motor vehicle. In my view, the restriction is inherently reasonable and entirely legal. It cannot and does not support a reversal.
¶37 I am concerned that the Court is basing its conclusion regarding the driving restriction on a somewhat narrow look at the District Court’s sentence and judgment. For example, at ¶ 14, the Court states “[tjhe District Court specifically found that Herd was a good prospect *500 for rehabilitation.” What the District Court actually said about Herd’s rehabilitative prospects is “I think the prospects of rehabilitating you are good if you follow through on this judgment[,]” necessarily including the 40-year driving restriction and all other conditions of the suspended sentences. Also in ¶ 14, the Court observes the trial court “found that [Herd] had led a law-abiding life for a substantial period before the collision, and that she was not likely to commit another crime.” True again, but the District Court also determined that she committed four counts of felony negligent homicide and that a crime was not likely to recur if she successfully completed supervised probation-including meeting the conditions imposed. I submit that the Court’s incomplete recitation of these facts leaves the reader with an incomplete and, therefore, misleading view of the District Court’s sentence.
¶38 Finally, with regard to the driving restriction itself, the Court is persuaded by Herd’s argument that “she has no meaningful chance at rehabilitation if she can never drive again.” I am not. It is no doubt true that life as most of us know it-or choose it-would be more difficult without the ability to drive a vehicle. On the other hand, many people have never driven and it does not prevent them from having a full and productive life. Some people use public transportation, others walk or ride bicycles, and still others ride with friends or family. The notion that rehabilitation is nearly impossible without the opportunity to drive a vehicle strikes me as nonsense, especially in light of the overall sentence imposed here. The tradeoff of not driving for 40 years as opposed to incarceration for 80 years, for a person whose driving has killed four people, seems an easy and very reasonable one to me.
¶39 Finally, at ¶ 25, the Court concludes that the District Court abused its discretion in imposing the 40-year driving ban under the facts of the case and in light of its own statements about that court’s findings in ¶ 14, which I addressed above. The Court goes on to state that nothing of record suggests that such a prohibition is necessary for the protection of society as a whole. Apparently the Court is willing to “overlook” the stark fact that Herd’s negligent driving killed four people. In my view, this is simply unsuppoi'table.
¶40 For all the reasons stated, I dissent from the Court’s opinion. I would affirm the District Court.
JUSTICE WARNER joins in the dissent of CHIEF JUSTICE GRAY.